**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JOHN E. HANNON, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 3:10-CV-1382-K-BH |
| | ) | |
| KIWI SERVICES, | ) | |
| Defendant. | ) | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order No. 3-251*, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations on dispositive motions. Before the Court is *Defendant's Motion for Summary Judgment*, filed August 8, 2011 (doc. 27). Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Plaintiff John E. Hannon, a black male, brings this action against his former employer, Kiwi Services Inc. (Defendant), for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII). (doc. 1, p. 1.) He claims he did not receive the same compensation as non-black employees, and when he filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) against Defendant, it retaliated against him by terminating his employment. (*Id.*)

Plaintiff began his employment with Defendant in 2005 as a telephone sales representative. (doc. 29, p. 2.) His responsibilities were to take calls in the call center and sell Defendant's products and services to the caller. (*Id.*) Defendant paid all its telephone representatives, including Plaintiff, $10.50 an hour plus commission, and provided all its employees the opportunity to work overtime

- 1 -

on a voluntary basis.  (*Id.*)  All telephone sales representatives, including Plaintiff, controlled the amount of commission that they received by classifying calls as either a sales opportunity or a non-sales opportunity.  (*Id.* at 2-3.)  A telephone sales representative would have a higher sales ratio if he had a higher number of closed sales from among the calls that he marked as sales opportunities, and a lower sales ratio if he had a lower number of closed sales from among the calls that he marked as sales opportunities.  (*Id.* at 3.)  If a call was a sales opportunity, and a sales representative marked it as a non-sales opportunity, that call would not be counted in his closed sales ratio.  (*Id.*)  If a telephone sales representatives purposefully misclassified sales opportunities as non-sales opportunities, he could artificially inflate his sales ratio and thus artificially increase his compensation.  (*Id.*)  Defendant considered such activity to be "stealing," and trained its employees on this policy and on how to avoid misclassifying calls.  (*Id.*)  Defendant provided such training to Plaintiff around the time he was hired, in or about March of 2005.  (*Id.*)  Defendant also randomly monitored its telephone sales representatives' telephone calls to ensure that they were providing satisfactory customer service and to ensure that the sales representatives were properly classifying calls.  (*Id.* at 3-4.)

On or about June 8, 2009, Plaintiff filed a charge of discrimination with the EEOC claiming, among other things, that he was discriminated against in terms of his compensation due to his race. (*Id.* at 4.)  On or about July 7, 2009, Defendant gave him a written warning for misclassifying sales opportunities as non-sale opportunities.  (*Id.*)  During the week of September 6, 2009, Defendant announced Plaintiff as salesperson of the week, and from September 6 through September 12, 2009, awarded him second place in the Fall Spectacular # 1 Contest.  (*Id.*)  On or about February 4, 2010, seven months after he was given a written warning for misclassifying sales opportunities as non-

sales opportunities, Defendant terminated Plaintiff's employment.  (*Id.*)  The termination letter pointed out that Plaintiff had misclassified six calls that were sales opportunities in January and February of 2010, and that he had already received a written warning and had been placed on probation for misclassifying in July of 2009.  (doc. 35, p. 18.)  On or about February 8, 2010, Plaintiff filed a charge with the EEOC claiming retaliation.  (doc. 29, p. 4.)  On July 15, 2010, Plaintiff filed this lawsuit alleging discrimination and retaliation under Title VII.  (doc. 1.)

Defendant now moves for summary judgment on Plaintiff's claims against it.  With a timely filed response and reply, the motion is now ripe for determination.

## II.  EVIDENTIARY OBJECTIONS

Defendant generally moves to strike each of the documents attached to Plaintiff's response as hearsay.  (doc. 36, p. 2.)  These documents consist of Defendant's written warning, tabulations of employment and compensation data for its black and white employees, its responses to Plaintiff's interrogatories and requests for production, Plaintiff's termination notice, an email and a letter from Defendant's employee Elizabeth Cyr, a commission forfeit form, the EEOC Charge dated June 8, 2009, an EEOC complaint form, the complaint in this action, and a news release by the United States Department of Labor (DOL) announcing a lawsuit against Defendant for failing to pay overtime pay in violation of the Fair Labor Standards Act (FLSA) and for record-keeping violations of the FLSA. (*See* doc. 35.)

Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence.  *See* Fed. R. Evid. 801-05.  Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for

striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex.2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir.2004)).   Objections lacking specificity do not satisfy the requirements of Rule 103, and a loosely formulated and imprecise objection does not preserve error. *Id.* (citing *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998).   "[A] trial court judge must be fully apprised of the grounds of an objection." *Id.*   Because Defendant's objection in its motion to strike does not meet the specificity requirements of Rule 103(1)(a), the motion is denied.

Notwithstanding the lack of specificity, almost all of the documents appear to be Defendant's own, and Plaintiff provides sworn testimony that he received most of these documents through Defendant's attorneys or from answers to his discovery requests (doc. 38, pp. 1-2).   Defendant's responses to Plaintiff's interrogatories, its responses to his requests for production, including its written warning, tabulations of employment and compensation data for its black and white employees, its termination notice, the email and letter from its employee Elizabeth Cyr, and the commission forfeit form are either admissions of a party opponent and therefore not hearsay, *see* Fed. R. Evid. 801(d)(2)(A), or fall in the "business records" exception to the hearsay rule, *see* Fed. R. Evid. 803(6).   *See Anand v. BP West Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1090 n.11 (C.D. Cal. 2007) (holding that documents produced in response to discovery requests are admissible because they are self-authenticating and constitute the admissions of a party opponent under Rule 801(d)(2)(A)); *Federal Trade Commission v. Hughes*, 710 F. Supp. 1520, 1523 (N.D. Tex. 1989) (same).   The EEOC charge and complaint have not been offered for the truth of the matter asserted and are therefore not hearsay. *See* Fed. R. Evid. 801(c).   The DOL news release is hearsay because it is offered for the truth of the matter asserted and has not been considered.[1]

---

[1] Even if considered, the DOL news release will not change the outcome because it does not show that Plaintiff was denied overtime or that any alleged denial was based on race.

Defendant also moves to strike the factual assertions in Plaintiff's response on grounds that the assertions are neither sworn nor verified and are not made under penalty of perjury.  (doc. 36, p. 2.)  Again, Defendant does not specify which statements are inadmissible.  Courts are not required to ferret through the record in search of objectionable statements.  *See Tucker*, 462 F.Supp.2d at 722. To the extent that the memorandum contains any statements that are plainly inadmissible, they will not be considered.  *Id.* (citing Fed. R. Evid. 103(d)).  Defendant's motion to strike the factual assertions is also denied.

### III.   PLAINTIFF'S DISCOVERY-RELATED MOTIONS

Plaintiff complains in his response that Defendant failed to produce the misclassified calls as well as records of how may black employees versus white employees were terminated due to misclassifying calls could liberally be construed as a motion under Fed. R. Civ. P. 56(d)[2].  (doc. 34, pp. 9-10.)  Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. 56(d).  "Rule 56(d) motions are generally favored and should be liberally granted, but the movant must demonstrate (1) why he needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact."  *Chenevert v. Springer*, 431 F.App'x 284, 287 (5th Cir. 2011) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534-35 (5th Cir. 1999)).  Plaintiff has not explained how the additional discovery he seeks will create a genuine issue of material fact.  His Rule 56(d) motion is therefore denied.

---

[2] Rule 56(d) was formerly codified as Rule 56(f).

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d

1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam);  *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218  (N.D. Tex. 1990).  However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim."  *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## V.  RACE DISCRIMINATION

Defendant first moves for summary judgment on Plaintiff's Title VII race discrimination claim, which is allegedly based on discrimination in compensation and discriminatory termination. (doc. 27, pp. 9-11.)

### A.  Analytical Framework

Title VII prohibits an employer from discriminating against any individual with respect to the compensation, terms, conditions, or privileges of his employment based on his race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a)(1).  Discrimination claims under Title VII may be proved through either direct evidence, statistical proof, or the framework established by

the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination by showing that he (1) belongs to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone outside his protected class or was treated less favorably than similarly situated employees outside the protected class. *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)); *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that race, color, sex, religion, or national origin

- 8 -

was a motivating factor for the employment practice at issue. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

**B. Compensation**

Defendant moves for summary judgment on Plaintiff's discrimination in compensation claim on grounds that Plaintiff can neither make out a *prima facie* case of discrimination in compensation nor show that his compensation was motivated by his race. (doc. 28, p. 10.) Defendant argues that any difference in commissions was attributable to Plaintiff's own input into the computer, and the overtime hours he logged in on a purely voluntary basis. (*See id.*; doc. 29, p. 3.)

1. *Prima Facie* Case

"To make out a *prima facie* case of racial discrimination in compensation, a plaintiff must show that he was a member of a protected class and that he was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)). An individual plaintiff claiming racial discrimination in pay under Title VII must show that his circumstances are "nearly identical" to those of a better-paid employee who is not a member of the protected class. *Id.* at 523 (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "In making this showing, an individual plaintiff pursuing an individual claim may not rely on the type of pattern-or-practice evidence that is acceptable in class action suits alleging similar conduct, such as general statistical evidence." *Id.* (citing *Thompson v. Leland Police Dep't*, 633 F.2d 1111, 1114 (5th Cir. 1980)); *see also Celestine v. Petroleos de Venezuela, S.A.*, 266 F.3d 343, 356 (5th Cir. 2001) (pattern or practice evidence should not be applied to individual claims of discrimination at the summary judgment stage). "Instead, he must present *prima facie* evidence that

- 9 -

his pay was lower than *specific* employees who are not members of the protected class." *Taylor*, 554 F.3d at 523.

Plaintiff argues that Defendant discriminated against him when it did not pay him correct commissions and did not allow him to work overtime. (doc. 34, pp. 12-15.) Plaintiff proffers tables showing differences in commission and overtime payments between black and white employees. (doc. 35, pp. 7-9, 11.) Although Plaintiff names specific white employees that he claims were paid differently than him, he does not explain how, or provide any evidence that, they were in circumstances nearly identical to him. He does not provide evidence that the white employees worked the same number of hours that he did, that they made the same or around the same number of sales that he did, or that they were given the opportunity to work overtime hours while he was not. Because there is no genuine material fact issue on at least one of the elements of Plaintiff's *prima facie* case for discrimination, Defendant is entitled to summary judgment of his discrimination in compensation claim.

2. Legitimate Non-Discriminatory Reason

Even if Plaintiff could establish a *prima facie* case of discrimination, Defendant proffers evidence showing that there is a legitimate non-discriminatory reason for the difference between Plaintiff's compensation and that of the specific white employees at issue. As discussed, if an employee establishes a *prima facie* case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

Defendant offers evidence showing that all telephone sales representatives' compensation, including Plaintiff's, was based solely on a base salary of $10.50 an hour plus commission derived from the employees' own input into a computer system, and that all employees, including Plaintiff, had the opportunity to work overtime on a voluntary basis. (doc. 29, pp. 1-3.) Defendant argues that there is no room for discrimination in this process and no computer algorithm for discrimination. (doc. 28, p. 10.) Defendant has met its summary judgment burden to show that any difference in compensation between Plaintiff and the white employees was derived from their own input into the computer and the overtime hours they logged on a purely voluntary basis. The burden now shifts to Plaintiff to raise a genuine issue of material fact by showing either that the proffered reasons are a pretext for discrimination or that race was a motivating factor in Defendant's termination decision.

3. Pretext/Mixed Motives

Plaintiff disputes Defendant's assertions that his commission was generated from sales input into the computer system and that overtime was voluntary. He claims that management was responsible for approving or denying commissions and made mistakes by not paying correct commission. (doc. 34, p. 11.) He points to a one-time determination by management that he had not been paid a $6 commission he was due, and he questions the number of other times that management might have made these "mistakes." (*Id.*) He also makes unsworn assertions that management never told him that overtime was voluntary, only that he could work overtime when it was mandatory. (*Id.*) He fails to provide any evidence, either circumstantial or direct, that permits a reasonable jury to believe that Defendant's reason for the amount he received as compensation was false and that illegal discrimination was the actual reason, or that race was a motivating factor for

his compensation.[3]  "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).  Since Plaintiff has failed to identify any evidence of pretext or discriminatory motive, summary judgment should be granted in Defendant's favor with respect to his Title VII race discrimination in compensation claim.

## C. Termination

Defendant also moves for summary judgment on Plaintiff's discriminatory termination claim on grounds that Plaintiff can neither make out a *prima facie* case of discrimination, nor show discriminatory motive behind its decision to terminate Plaintiff.  (doc. 28, pp. 10-11.)  Defendant argues that it terminated Plaintiff for trying to game the computer system to inflate his sales ratio — for which he had been warned and for which other employees had been fired.  (*Id.* at 11.)

### 1. *Prima Facie* Case

As discussed, a plaintiff may establish a *prima facie* case of discrimination by showing that he (1) belonged to a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone outside his protected class or was treated less favorably than similarly situated employees outside the protected class.  *McCoy*, 492 F.3d at 556.

While Plaintiff does not specifically address a *prima facie* case of discriminatory termination, he argues that Defendant terminated all blacks for misclassification of calls, unlike white employees who were moved to new positions within the company.  (doc. 34, p. 11.)  He offers tables showing

---

[3]  Plaintiff attaches a letter from Elizabeth Cyr (management ) as evidence that he was not paid correct commissions.  In the letter, Elizabeth Cyr states that Plaintiff asked her to review commissions that he believed he was not paid.  (doc. 25, pp. 5-6.)  She also states, however, that all submitted commissions were reviewed, and that Plaintiff received his commission on the ones that qualified.  (*Id.*)  The letter does not create a genuine material fact issue that race was the motivation for Defendant's failure to pay his commission.

employment dates for employees in his protected class and for specific employees of Defendant in the unprotected class. (doc. 35, pp. 7, 10.) The question of whether Plaintiff has presented a *prima facie* case of discrimination turns on whether the specific non-black employees he compares himself with were similarly situated to him.[4] *See Lee*, 574 F.3d at 259. An employee that "proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Id.* at 259-60 (quoting *Little v. Republic Refining Co.*, Ltd., 924 F.2d 93, 97 (5th Cir.1991)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260 (citing *Okoye*, 245 F.3d at 514). While Plaintiff offers the employment and termination dates of specific employees in the non-protected class, he does not offer evidence that the employees were similarly situated to him. Summary judgment is therefore appropriate in Defendant's favor on his Title VII discriminatory termination claim as well.

2. <u>Legitimate Non-Discriminatory Reason</u>

Assuming that Plaintiff can make out a *prima facie* case of racial discrimination, Defendant has offered a legitimate non-discriminatory for his termination. Defendant offers affidavit testimony sufficient for a reasonable jury to conclude that it terminated Plaintiff for trying to "game" the computer system to inflate his sales ratio and increase his compensation. (doc. 29, pp. 1-3.) Defendant has met its burden of production. The burden now shifts to Plaintiff to provide evidence

---

[4] Any differences in the length of time for which Defendant employed black employees compared to white employees constitutes pattern or practice evidence which cannot be applied to Plaintiff's individual claim of discrimination at the summary judgment stage. *See Celestine*, 266 F.3d at 356.

to support a jury finding that Defendant's proffered reason is either a pretext for discrimination, or that Plaintiff's race was a motivating factor in his termination decision.

    3. <u>Pretext/ Mixed Motives</u>

Plaintiff argues that he had been an employee of Defendant for five years with an exemplary record before he was accused of trying to game the system, and that he was never allowed to listen to the allegedly misclassified calls for which he was terminated.  (doc. 34, pp. 10-14.)  These facts by themselves are insufficient for a reasonable jury to conclude that Defendant's reason for his termination was false and that illegal discrimination was the actual reason, or that race was a motivating factor for his compensation.  Defendant is therefore entitled to summary judgment on Plaintiff's Title VII claim for discriminatory termination.

## VI.  RETALIATION

Defendant moves for summary judgment on Plaintiff's retaliation claim on grounds that he cannot make out a *prima facie* case of discrimination and cannot overcome its legitimate non-discriminatory with evidence of pretext or discriminatory motive.  (doc. 28, pp. 11-14.)

## A.  Analytical Framework

Title VII makes it unlawful for employers to retaliate against an individual "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).  Retaliation claims under Title VII are analyzed under the burden-shifting framework applicable to Title VII discrimination claims.  A plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he participated in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) a causal connection existed

- 14 -

between his protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *McCoy*, 492 F.3d at 556. If the employer meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the employer's reason is not true, but is instead a pretext for retaliation, or (2) that the employer's reason, while true, is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected activity. *See Rachid*, 376 F.3d at 312; *Cothran v. Potter*, 2010 WL 1062564, at *5 (N.D. Tex. Mar. 22, 2010).

## B. *Prima Facie* Case

It is undisputed that Plaintiff has met the first two prongs of a *prima facie* case for retaliation: he filed an EEOC charge in June 2009 and Defendant terminated him seven months later in February 2010. At issue is whether Plaintiff can establish the requisite causal link between his protected activity of filing his EEOC charge and his termination. (doc. 28, pp. 12-13.) "The existence of a causal link between protected activity and an adverse employment action is a 'highly fact specific' and difficult question." *Smith v. Xerox Corp.*, 371 F.App'x 514, 520 (5th Cir. 2010) (citing *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994)). The Fifth Circuit has identified three factors for guidance in determining causation: (1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and his termination. *See Smith*, 371 F.App'x at 520; *Nowlin*, 33 F.3d at 508.

Plaintiff argues that the timing of his termination, coupled with the fact that he had never

received a written warning[5] before he filed an EEOC charge and received it within a month of filing

the charge, is sufficient to establish a causal connection.  (doc. 34, p. 15.)  Since there is no evidence

that Plaintiff was disciplined for misclassifying calls before he filed an EEOC charge, the first factor

weighs in favor of finding a causal connection.  The second factor weighs against such a finding,

however, because of evidence showing that Defendant terminated Plaintiff in accordance with its

policy of considering call misclassification "stealing."[6]  (doc. 29, pp. 3-4.)  The third factor also

weighs against finding a causal connection because the seven month gap between  the filing and his

termination is too attenuated a link between the two.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S.

268, 273-74 (2001) (holding that temporal proximity must be "very close" and citing cases where

a lapse of three to four months was insufficient to show causal connection); *Russel v. Univ. of Tex.*,

234 F.App'x. 195, 207 (5th Cir. 2007) (evidence of temporal proximity alone cannot sustain an

inference of causation when there is a six-month gap between the protected activity and the alleged

adverse employment action).  In sum, Plaintiff has failed to establish a causal link between his

EEOC charge and his termination.

## C.  Legitimate, Non-Retaliatory Reason

Even if Plaintiff could establish a *prima facie* case of retaliation, Defendant has proffered

a legitimate, non-retaliatory reason for the alleged conduct.  The evidence is sufficient for a

reasonable jury to conclude that any conduct of Plaintiff's supervisors, including the termination

---

[5]  The only adverse action at issue here is Plaintiff's termination. The written warning for misclassifying calls would not constitute an adverse employment action as it would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).  Defendant has presented evidence of a colorable ground for the warning, and a reasonable employee would have understood that a warning under these circumstances was not necessarily indicative of a retaliatory mind-set. *See DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F.App'x 437, 442 (5th Cir. 2007).

[6]  Plaintiff has not identified or produced any summary judgment evidence that Defendant failed to follow proper procedures in terminating him.

decision was related to his misclassification of calls in July 2009 and in January and February of 2010. (doc. 29, p. 4; doc. 35, p. 18.) The burden now shifts to Plaintiff to point out evidence sufficient for a jury finding that Defendant's proffered reason is either a pretext for retaliation, or that Plaintiff's protected activity was a motivating factor in Defendant's termination decision.

### D.  Pretext/Mixed Motives

Plaintiff essentially argues that the written warning for misclassifying calls within one month of his EEOC charge and the subsequent accusation six months later of an additional six misclassified calls was all part of a scheme to terminate his employment. (*See* doc. 34.) Plaintiff makes unsworn assertions that one of the allegedly misclassified calls took place at 3:30 a.m. when he did not work, that he was not allowed to listen to his calls, and that Defendant never placed him on probation on July 7, 2009, as it claimed in his notice of termination. (doc. 34, p. 15.) Apart from his subjective belief of retaliation and his own unsworn representations, however, Plaintiff has offered nothing to show that Defendant's proffered reason for his termination was mere pretext or that retaliation was a motivating factor in Defendant's termination decision. Summary judgment is therefore appropriate in favor of DISD on his Title VII retaliation claim as well.

### VII.  RECOMMENDATION

Defendant's motion for summary judgment should be **GRANTED**, and Plaintiff's Title VII race discrimination and retaliation claims against it should be **DISMISSED** with prejudice.

**SO RECOMMENDED** on this 30th day of December, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

       A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE